WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
CHARLES J. HARDER (BAR NO. 184593)
 charder@wrslawyers.com
HANY FANGARY (BAR NO. 190555)
 hfangary@wrslawyers.com
MICHELLE E. GOODMAN (BAR NO. 238429)
 mgoodman@wrslawyers.com
11400 West Olympic Boulevard, Ninth Floor
Los Angeles, California 90064-1582
Telephone: (310) 478-4100 / Facsimile: (310) 479-1422

Attorneys for Counter-Defendants
GRASSHOPPER HOUSE, LLC,
PASSAGES SILVER STRAND, LLC,
CHRIS PRENTISS and PAX PRENTISS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC, d/b/a PASSAGES MALIBU, a California limited liability company, PASSAGES SILVER STRAND, LLC, a California limited liability company,<br><br>Plaintiffs<br><br>v.<br><br>RENAISSANCE RECOVERY SERVICES, LLC, a California limited liability company; NNB RECOVERY SERVICES, LLC, a California limited liability company; and SALVATORE PETRUCCI, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTER-CLAIM | Case No.: CV 10-3198 DMG (JCx)<br><br>(Assigned to Hon. Dolly M. Gee, Courtroom 7)<br><br>**DECLARATION OF CHARLES J. HARDER IN SUPPORT OF COUNTER-DEFENDANTS' *EX PARTE* APPLICATION TO ENJOIN OPPOSING COUNSEL'S UNETHICAL AND UNLAWFUL CONDUCT, DISQUALIFIY OPPOSING COUNSEL FROM THE CASE, AND IMPOSE ADDITIONAL APPROPRIATE RELIEF; OR ALTERNATIVLY, FOR AN ORDER SHORTENING TIME TO HEAR THIS APPLICATION**<br><br>Hearing Date: TBD<br>Time: TBD<br>Location: Courtroom 7<br><br>Complaint Filed: April 28, 2010<br>Discovery Cutoff: May 31, 2011<br>Pretrial Conference: September 6, 2011<br>Trial: October 4, 2011 |

-1-
HARDER DECLARATION IN SUPPORT OF PASSAGES' *EX PARTE* APPLICATION
RE: UNETHICAL AND UNLAWFUL CONDUCT
I:\17875\006\Pleading\Harder Decl re Ex Parte re Doroshow conduct.docx

I, Charles J. Harder, declare:

1. I am an attorney at law duly admitted to practice before the United States District Court for the Central District of California. I am a partner of the law firm of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, attorneys of record for plaintiffs and counter-defendants GRASSHOPPER HOUSE, LLC and PASSAGES SILVER STRAND, LLC (collectively, "Passages"). I have personal knowledge of the following facts, and if called and sworn as a witness, I could and would testify competently thereto.

2. As an officer of this Court, I take very seriously the matters set forth in this *ex parte* application. My clients take these matters very seriously as well. In my nearly fifteen years of practicing law, I have never had an occasion to file an application or motion of this type, and hope that I never have to again. Over the past year, I made every effort to tolerate and ignore the unprofessional and unethical conduct of counsel discussed herein. However, the events of the past three weeks, described herein, have left my clients and me with no alternative but bring these matters to the immediate attention of the Court, and to seek appropriate relief.

3. Attached hereto as **Exhibit A** is a true and correct copy of an email that I received on February 10, 2011 at 5:56 p.m. from James E. Doroshow ("Doroshow"), counsel of record for Counter-Claimants Renaissance Recovery Services, LLC, NNB Recovery Services, LLC, and Salvatore Petrucci (collectively, "Renaissance" or "Counter-Claimants"). The email copied d his partner, Aaron Craig, and another person at their firm named Carl Enockson. The email states, in its entirety:

/ / /

/ / /

/ / /

/ / /

/ / /

HARDER DECLARATION IN SUPPORT OF PASSAGES' *EX PARTE* APPLICATION
RE: UNETHICAL AND UNLAWFUL CONDUCT

I:\17875\006\Pleading\Harder Decl re Ex Parte re Doroshow conduct.docx

> Mr harder,
>
> If our litigation is not settled next tuesday at the mediation, please advise your client that all bets are off. Among other activities, I am planning on going to both the press and federal trade commission with the information we have acquired in connection with our false advertising claims.
>
> My clients and I will no longer keep this shameful record of deceit under wraps.
>
> Jim doroshow.

4. Renaissance and Doroshow made certain demands during the February 15, 2011 mediation, which I will not discuss here because of the presumed mediation privilege. Needless to say, the case did not settle that day, and the mediation was terminated at approximately 12:30 p.m.

5. On February 25, 2011, at approximately 12:15 p.m., Doroshow placed a telephone call to me. During the call Doroshow told me that he had not yet gone to the press or the FTC with information about Passages, and that if Passages paid Renaissance a specific six-figure sum as a "settlement," then he would not take the information about Passages to the press or the FTC. He did not specify the information about Passages that he was threatening to take to the press and the FTC.

6. The continuing nature of these threats, and escalation of Doroshow's wrongful conduct, and the impact that they are having on the litigation and Passages' ability to defend itself against the Counterclaims filed by Renaissance, warrants the filing of this application on an *ex parte* basis. This is an emergency situation that requires the immediate attention of the Court, and a timely resolution, to ensure that Passages can receive a full and fair hearing on Renaissance's Counterclaims. Moreover, Doroshow's conduct, as described throughout this Declaration, has significantly interfered with the orderly administration of the litigation, and he, his

firm, and his clients, have unreasonably interfered with, delayed and burdened Passages in its effort to both prosecute its claims (now dismissed) and defend against the Counterclaims in this action.

7. The litigation between Passages and Accelerated Recovery Centers, LLC, ("Accelerated"), Case No. CV 09-8128 DMG (PLAx) (the "Accelerated Action") (which was dismissed on December 3, 2010), involved the same Plaintiffs/Counter-Defendants (Passages) and the same counsel of record on both sides: my firm for Passages, and Doroshow and his firm for the different sets of Defendants/Counter-Claimants. The claims in the Complaint, and in the Counterclaim, were substantially similar except that they involved different Defendants/Counter-Claimants. During the Accelerated Action, **Doroshow stated to me on at least two occasions in 2010 that he intended to "expose" Passages by sending out a press release containing information about Passages that he obtained from the lawsuit, and that Passages' business would be destroyed or ruined from it, or words to that effect.** I included a statement about these threats in my Declaration of September 20, 2010 filed in the Accelerated Action. (Accelerated Dkt. #83-1, ¶ 7) A true copy of that prior Declaration is attached hereto as **Exhibit B**, with the relevant portions highlighted.

8. Doroshow took a deposition on August 23, 2010 in the Accelerated Action, of Pax Prentiss's former nanny, Rana Ayzeren. A true copy of relevant portions of the Azyeren deposition transcript is attached hereto as **Exhibit C**. Specifically, Doroshow asked Ayzeren if she once saw Chris Prentiss in the backyard naked, and if he "had a condom on" and "had an erection," among other such questions.

9. Ayzeren did not testify about any alleged attempted "rape." However, Doroshow, during Azyeren's deposition, and in emails to Passages' counsel before and after her deposition, and in papers filed with the Court, repeatedly accused Chris Prentiss of "attempted "rape." Attached hereto as **Exhibit D** are true copies of some

-4-
HARDER DECLARATION IN SUPPORT OF PASSAGES' *EX PARTE* APPLICATION
RE: UNETHICAL AND UNLAWFUL CONDUCT

of those statements by Doroshow. *See also*, Exhibit C hereto, the Azyeren deposition transcript, where Doroshow (not Ayzeren) made these accusations. Chris Prentiss vehemently denies the allegations by Doroshow. I have investigated and found no evidence that Ayzeren ever reported any such allegations to law enforcement of any kind, or to anyone else. I also am not aware of any evidence whatsoever of these supposed allegations.

10. In Exhibit C hereto (the Azyeren deposition transcript), Doroshow accuses Chris Prentiss of "rape," and then asks the court reporter to prepare an expedited transcript of the deposition "for purposes of a press conference that will be conducted shortly." (Accelerated Dkt #87-6, Page ID #2650, lines 2-16.) The obvious implication from the statement is that he would be appearing at a press conference to publicly make rape allegations against Chris Prentiss.

11. Chris Prentiss filed a Motion for Protective Order to terminate the deposition of Ayzeren. (Accelerated Dkt #87) Attached hereto as **Exhibits E, F, G, and H**, respectively, are the declarations of Chris Prentiss, Pax Prentiss, Charles Harder and Thomas Nitti (Mr. Prentiss's separate attorney in that action), with the accompanying exhibits, filed in support of the motion for protective order, with relevant portions highlighted. These documents also can be found at Accelerated Dkt #87-1 through #87-6.

12. Magistrate Judge Paul Abrams granted Chris Prentiss's motion for protective order on October 6, 2010, ordered the Ayzeren deposition terminated, and ordered Doroshow's client, Accelerated, to pay $2,450 in monetary sanctions. Attached hereto as **Exhibit I** is a true copy of that Order, which also can be found at Accelerated Dkt #97. Footnote 3 of that Order, which refers to the exhibits attached to the Declarations of Thomas Nitti and Charles Harder (Exhibits H and I hereto) regarding Doroshow's conduct, states:

> The conduct of counsel as evidenced by the exhibits to this Motion [Accelerated Dkt #87-6, Exhs. A-C] is an embarrassment to the profession, an insult to the Court, and a disservice to the clients in this action. The Court advises that if counsel are unable to control themselves when dealing with opposing counsel, they should have the good sense to remove themselves from this litigation.

13. At each of the four depositions in the Accelerated Action, and each of the *many* meet-and-confer conferences and other in-personal meetings in both the Accelerated Action and this action, Doroshow's behavior has been consistently rude, obnoxious, belligerent, caustic, abrasive, verbally abusive, threatening, demeaning and insulting. It would take a very long time for me to list each instance. Moreover, to experience his behavior live and in person, with the abusive tone that he uses, has a far greater impact that just describing it in written words. Also, the transcript shows only the times that we were *on the record*. When we were *off* the record, Doroshow usually was even more rude, obnoxious, abrasive, threatening, demeaning, etc. To provide a few examples of his *on* the record conduct, attached hereto as **Exhibit J** is true and correct copies of relevant excerpts from the transcript of the deposition of Chris Prentiss taken on July 20, 2010. Attendees including Chris Prentiss, his personal attorney Thomas Nitti, Chris's son Pax Prentiss, Doroshow, and myself. Page 98 of the transcript shows a point when I was making objections to Doroshow's questions and conduct for the record, and he made a gesture with his hand and mouth, simulating oral sex. My objection to that gesture, and his conduct, is on the record. (Exh. J, p. 98)

14. Doroshow's written communications in this action, in the form of letters, faxes and emails, likewise have been consistently rude and harassing. In one two-day period (September 27-28, 2010), Doroshow sent me twenty-three (23) emails. After

1  that, I informed him that I would no longer accept emails from his office, and he
2  eventually agreed, though he did not observe our agreement and continued to send me
3  harassing emails anyway. Attached hereto as **Exhibit K** are true copies of a small
4  sampling of Doroshow's emails to me over the past year both in the Accelerated
5  Action and this action.

6  15.  On February 15, 2011, shortly before the mediation in this case began,
7  the mediator introduced himself, and asked Doroshow to "say hello" to me.
8  Doroshow immediately exclaimed *loudly* so that everyone in the reception area could
9  hear: "I'm not going to talk to him, he's an *asshole*!" Doroshow then immediately
10  stated (still referring to me): "He's a *schmuck*!" I did nothing to provoke the
11  response. I had not even spoken to him or looked at him that day, or for several days,
12  when he shouted these statements.

13  16.  In this action, Renaissance has failed and refused to produce *any* of its
14  documents. Therefore, on February 22, 2011, Passages filed a motion to compel
15  Renaissance to produce its responsive documents. (Dkt #49.) The motion is pending
16  before Magistrate Judge Chooljian, and scheduled for a hearing on March 15, 2011.

17  17.  In this action, Passages noticed the depositions of several Renaissance
18  witnesses. Renaissance has refused to produce *any* of its witnesses for deposition.
19  Therefore, Passages has initiated a joint stipulation for a motion to compel
20  Renaissance to produce its witnesses for deposition. That motion is scheduled for a
21  hearing before Magistrate Judge Chooljian on March 29, 2011.

22  18.  In the Accelerated Action, Doroshow did not produce a *single page* of his
23  clients' documents, notwithstanding the requirements of both FRCP Rule 26(a) and
24  Rule 34 to do so. Passages filed a Notice with this Court of Accelerated's failure to
25  produce any of its documents, which requested that Accelerated be prohibited from
26  introducing documents and certain other evidence at trial. (Accelerated Dkt. #98)
27  Moreover, Passages filed a motion to compel production of Accelerated's documents,

which was granted on the eve of the discovery cutoff, and Magistrate Judge Abrams ordered Accelerated to produce all of its responsive documents by the discovery cutoff. (Accelerated Dkt. #114) The case settled the day after the Order compelling Accelerated to produce its documents. (Accelerated Dkt. #119)

19. Also in the Accelerated Action, Doroshow refused to produce his clients' witnesses for deposition. Passages was required to seek, and did obtain, an Order from Magistrate Judge Paul Abrams requiring Accelerated to produce its witnesses for deposition. (Accelerated Dkt. #104 and #111)

20. In this case, Renaissance/Doroshow's stated reasons for refusing to produce Renaissance's documents or witnesses is the contention that my firm should be "disqualified" because David Kaiser, who once worked for Renaissance, now works at Passages, and Doroshow claims that he supposedly had "attorney client communications" with Kaiser when he worked at Renaissance. However, it is my understanding, from having spoken to David Kaiser about this issue, that Mr. Kaiser stopped working for Renaissance in January 2010. This lawsuit was filed on April 28, 2010 – *three months after* Kaiser had left Renaissance. (Dkt #1) Moreover, the Complaint in this action has been dismissed with prejudice. (Dkt #14) The Counterclaims (the only claims pending in this the action) were filed on June 7, 2010 – *five months after* Kaiser had left Renaissance. (Dkt #14) It is my understanding, from having spoken to Mr. Kaiser, that he had *no communications* with Doroshow regarding either the Complaint or the Counterclaims, or any other matters pertinent to this lawsuit. Mr. Kaiser is willing to sign a Declaration to this effect, and it will be filed with the Court if and when necessary. The efforts by Doroshow to "disqualify" my firm appear to be more of the same bad faith litigation tactics that he has been practicing for the past year, and designed to prejudice Passages in its defense of Renaissance's Counterclaims, by preventing Passages from obtaining Renaissance's responsive documents and taking the depositions of its witnesses.

21. During the Accelerated Action, Doroshow and his client opposed Passages' motion to dismiss its own complaint, and filed a 25-page Opposition brief, and several supporting declarations. Doroshow's stated grounds for opposing the motion included the fact that Accelerated would lose its insurance coverage, and that Accelerated had pending counterclaims against Passages. (Accelerated Dkt #78 and #78-1.) Doroshow's Declaration states: "Accelerated is indemnified and defended in this case by its . . . insurance provider for the time period in question, Hanover Insurance group. This policy covers defense of Grasshopper's claims only; it does not pay for Accelerated's counterclaims." (Accelerated Dkt #78-1, ¶ 3.) A true copy of Doroshow's Declaration is attached hereto as **Exhibit L**, with the above-quoted statement highlighted. The obvious implication is that Doroshow was seeking to finance Accelerated's counterclaims with the insurance policy. About two weeks after the scheduled hearing date for that motion to dismiss the complaint, the case settled.

22. Attached hereto as **Exhibits M** and **N**, respectively, are true copies of news articles that I printed from the Internet, reporting on the individuals who were prosecuted for criminal extortion for making threats to "expose" David Letterman's extra-marital affairs if a seven-figure payment was not made, and, separately, threats to report Celine Dion's husband for "rape" if an eight-figure payment was not made. According to the articles, both sets of extortionists were sentenced to prison. Attached hereto as **Exhibit O** is a true and correct copy of a letter that I sent to counsel for Renaissance on February 28, 2011, via email, facsimile and U.S. mail, providing them notice of this *ex parte* application. I have not had any other communications with Renaissance's counsel regarding this application, and they have not communicated with me about their intent to oppose it.

/ / /

/ / /

/ / /

1  I declare under penalty of perjury under the laws of the United States of
2  America that the foregoing is true and correct. Executed on February 28, 2011 at
3  Los Angeles, California.

_____
CHARLES J. HARDER

-10-
**HARDER DECLARATION IN SUPPORT OF PASSAGES' *EX PARTE* APPLICATION
RE: UNETHICAL AND UNLAWFUL CONDUCT**
I:\17875\006\Pleading\Harder Decl re Ex Parte re Doroshow conduct.docx