1   JAMES E. DOROSHOW (SBN 112920)
      jdoroshow@foxrothschild.com
2   AARON CRAIG (SBN 204741)
      acraig@foxrothschild.com
3   FOX ROTHSCHILD LLP
    1800 Century Park East, Suite 300
4   Los Angeles, California 90067-3005
    Telephone: (310) 598-4150
5   Facsimile: (310) 556-9828
    Attorneys for Defendants/Counterclaimants
6   RENAISSANCE RECOVERY SERVICES,
    LLC, NNB RECOVERY SERVICES and
7   SALVATORE PETRUCCI

8

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                        SOUTHERN DIVISION

12

13   GRASSHOPPER HOUSE, LLC, a          )  Case No.: 10-3198 DMG (JCx)
     California limited liability company )
14   doing business as "PASSAGES        )  Hon. Dolly M. Gee
                                         )
15   MALIBU," PASSAGES SILVER           )
     STRAND, LLC, a California limited   )
16   liability company,                 )  DEFENDANTS' OPPOSITION TO EX
                                         )  PARTE APPLICATION TO
17                                       )  DISQUAILFY OPPOSING COUNSEL
            Plaintiffs,                  )  AND FOR OTHER RELIEF;
18                                       )
         v.                              )
19                                       )
     RENAISSANCE RECOVERY               )  DECLARATION OF JAMES E.
20   SERVICES, LLC, a California limited )  DOROSHOW
     liability company; NNB RECOVERY    )
21   SERVICES, LLC, a California limited )
     liability company; and SALVATORE   )
22   PETRUCCI, an individual            )
                                         )
23                                       )
            Defendants.                  )
24                                       )
                                         )
25   _____)
                                         )
26   AND RELATED COUNTER-CLAIM          )
                                         )
27

28

LA1 74734v2 03/01/11

I.   **PRELIMINARY STATEMENT**

The ex parte Application of Counter-Defendants Grasshopper House, LLC, Passages Silver Strand, LLC and Chris and Pax Prentiss (collectively, "Counter-Defendants" or "Grasshopper") to enjoin Mr. Doroshow and his firm and to disqualify them in this action is gamesmanship pure and simple. Grasshopper is fully aware that Counter-Claimants Renaissance Recovery Services, LLC, NNB Recovery Services and Salvatore Petrucci (collectively, "Counterclaimants" or "Renaissance") are about to file a Motion to Disqualify Grasshopper's trial counsel (Charles Harder and his firm), and now want to try to divert the Court's attention from the merits of Renaissance's imminent disqualification motion.

In fact, Renaissance and its counsel (James Doroshow) have tried for weeks to confer with Mr. Harder about two serious ethical violations recently discovered in this action. Yet, Mr. Harder has refused to confer in plain violation of this Court's Local Rules. His reasons for doing so are obvious. Mr. Harder and his firm have engaged in at least two important breaches of ethics, and now want to hide behind the cloak of the attorney-client privilege to avoid addressing them.

First, Renaissance has discovered that Grasshopper has now hired a former Renaissance employee who retained Mr. Doroshow to defend Renaissance in this very action. That employee, David Kaiser, was the former Chief Operating Officer of Renaissance, and not only hired Mr. Doroshow to defend this action, but had numerous meetings and confidential discussions with Mr. Doroshow about strategy and tactics. As such, Mr. Kaiser clearly has confidential attorney-client information materially related to this action. Notwithstanding his former employment within the "control group" of Renaissance, Grasshopper and Mr. Harder are now using Mr. Kaiser to assist them in this litigation against his former employer. Accordingly, the law plainly requires disqualification of Mr. Harder and his firm for this reason alone. See, e.g., In Re Complex Asbestos Litigation (1991) 232 Cal.App.3d 572 (when a former employee possess confidential attorney-client information materially

2

1   related to pending litigation and communicates with his new employer's

2   counsel, disqualification is mandatory unless the attorney can demonstrate that the

3   attorney-client information has not been used or disclosed in the course of the

4   employee's new employment).

5       Second, it has now been discovered that Mr. Harder and his clients (including

6   Mr. Kaiser) have once again engaged in improper ex parte communications with

7   Renaissance's Insurer in an effort to try to convince the Insurer to stop funding this

8   litigation and to force Renaissance to settle it. This too plainly violates the Rules of

9   Professional Conduct and also independently supports disqualification of Mr.

10  Harder and his firm.

11      Knowing that Renaissance's Motion to Disqualification is about to be filed,

12  Grasshopper and its counsel figured the "best defense would be a good offense."

13  Thus, they racked their brains to try to get out front with a possible motion to

14  disqualify Mr. Doroshow and his firm.  Even though they know Renaissance is

15  about to file a disqualification motion on a regularly noticed basis, they came up

16  with the idea of filing an Application asking this Court, among others, to disqualify

17  Mr. Doroshow, disbar him and report him to the United States Attorney for criminal

18  investigation, and to do so on an ex parte basis!

19      Moreover, knowing that Renaissance could not possibly respond to a 27-page

20  Memorandum within a day, Grasshopper and its counsel tried to play a game with

21  Renaissance and this Court.  They first notified Renaissance and Mr. Doroshow of

22  their intent to file their ex parte Application at 10:15 a.m. on Monday, February 28,

23  2011:  Even though Mr. Doroshow immediately called Mr. Harder to discuss the ex

24  parte Application with him before it was filed, and sent a subsequent email along

25  with a follow-up call, Grasshopper and its counsel filed the ex parte less than three

26  hours later without ever returning counsel's e-mail or calls!  Declaration of James E.

27  Doroshow filed concurrently herewith ("Doroshow Decl."), ¶5 and Exs. 1-3.  Mr.

28  Harder and his client would now like the Court to believe they fulfilled their

1    responsibilities of providing adequate notice under Local Rule 7-19, falsely stating

2    that "Renaissance has not communicated with Passages regarding whether it is

3    opposing this ex parte application." Application at p. 6.  In truth, Grasshopper and

4    Mr. Harder gave as little notice as possible, and then deliberately ignored Mr.

5    Doroshow's calls to avoid having to discuss the Application.

6    **II.    ARGUMENT**

7         **A.    This Motion Should Not Be Heard On An *Ex Parte* Basis.**

8         Grasshopper has levied serious charges against counsel for Counterclaimants

9    and their counsel, and Renaissance obviously deserves more than 24 hours to

10   respond.  There is no pressing urgency here except one:  Grasshopper wants to "get

11   in the first shot" before Counterclaimants filed their (noticed) motion to disqualify

12   Grasshopper's counsel.  As Counterdefendants well know (because Renaissance has

13   properly attempted to meet and confer with their counsel for weeks), Renaissance

14   has been preparing a motion to disqualify Grasshopper's counsel for working with a

15   former member of Renaissance's control group who hired and communicated in

16   confidence with Mr. Doroshow and was party to a motherlode of privileged

17   communications.  In addition, as they did in the Accelerated Action that preceded

18   this action, Mr. Harder and his clients have once again engaged in improper <u>ex parte</u>

19   communications with Renaissance's insurance carrier to convince it to stop funding

20   this litigation.  Renaissance's disqualification motion will be filed later today and

21   will be noticed for hearing on April 4, 2011—a date when Grasshopper's <u>ex parte</u>

22   Application could be heard as well.

23        That which is alleged to have occurred in this action can clearly be addressed

24   through a noticed motion since there has been no showing of exigency that would

25   justify <u>ex parte</u> relief, much less the drastic relief Grasshopper seeks in its

26   Application.  The supposed conduct about which Grasshopper complains consists

27   of: (1) an email sent 18 days prior to the filing of the <u>ex parte</u> Application about

28   which Counterdefendants never complained or attempted to discuss with

---

4

1  Counterclaimants; (2) a litany of allegations from 2010 pertaining to a now-settled

2  case (i.e., the Accelerated Action) wherein the two parties released each other and

3  their counsel from any and all claims arising from and related to that litigation; and

4  (3) a February 25, 2011 telephone call between counsel that Mr. Harder and his

5  clients grossly mischaracterize.  Even crediting Counterdefendants' description of

6  the call, which the Court should not do, the alleged statements made are no different

7  from an email sent weeks ago.  Nothing about this warrants ex parte relief—to the

8  contrary, the allegations levied and the forms of relief sought by Grasshopper

9  require that if the Court is to consider these allegations, Renaissance and its counsel

10  be given a fair opportunity to respond.

11      The sequence of events on February 28, 2011 leading up to the filing of the ex

12  parte Application is also telling.  Grasshopper's counsel sent Renaissance's counsel

13  a letter accusing Mr. Doroshow of "extortion" for the first time at 10:15 a.m.

14  Doroshow Decl., Ex. 1.  Renaissance's counsel then immediately attempted to

15  contact Grasshopper's counsel three times over the next two hours:  two telephone

16  calls and an email, and also began composing a letter in response.  Doroshow Decl.

17  ¶5, Ex. 2.  Grasshopper however filed its ex parte Application, declaration and

18  exhibits, totaling upwards of 200 pages, at or before 12:43 p.m., less than three

19  hours after first notifying Renaissance's counsel of their intent to file the

20  Application and without even bothering to return counsel's calls or email.

21  Doroshow Decl., Ex. 3.  This gamesmanship alone warrants denial of Grasshopper's

22  Application.

23      **B.   Plaintiffs' Version of Events is Grossly Distorted**

24      Grasshopper and its counsel obviously do not have sufficient time to address

25  all the allegations in Renaissance's massive Application in a day or less.  However,

26  that which has any relationship to this litigation (as opposed to events that allegedly

27  took place last year in the settled Accelerated Action) is falsely presented.

28  Specifically, the February 25, 2011 telephone call last Friday between counsel was

1   far different from how Grasshopper describes it.  In fact, counsel for

2   Counterdefendants (Charles Harder) brought up the topic of the unsuccessful

3   mediation earlier in February, and asked whether Renaissance had a settlement

4   demand.  Doroshow Decl., ¶11.  In response, Renaissance's counsel (James

5   Doroshow) informed Mr. Harder that Counterdefendants had planned to make an

6   initial demand at the mediation of $250,000.  Id.   Harder then asked Doroshow if he

7   had spoken to the press or the Federal Trade Commission about this matter, and

8   Doroshow said he had not done so, as he was still hopeful that a settlement could be

9   reached.  Id.  Doroshow also reiterated, during this call, that drawing media

10  attention to the false advertising counterclaim might make it difficult, if not

11  impossible, for a settlement to be reached.  Id.  It is now clear that Mr. Harder who

12  had obviously drafted his 27 page ex parte Application in advance of his February

13  25 telephone call with Mr. Doroshow, broached the issues of media coverage and

14  the FTC in an attempt to provide justification for filing his clients' canned ex parte

15  Application.

16      It is therefore of course completely false and contrived for Grasshopper to

17  assert that Counterclaimants' counsel did anything to suggest, imply or hint, even

18  remotely, that he intended to engage in a crime (including extorting money or

19  accusing any party of rape or any other crime), yet this is exactly what Grasshopper

20  is now arguing in its ex parte Application.  Application at pp. 12-15, 17, 20, 25.

21  Counterclaimants are at a loss as to why Grasshopper would insert these issues

22  regarding Chris Prentiss' conduct into the case, particularly in a publicly filed

23  document.  Counterdefendants are clearly not being honest with this Court.  It is

24  simply a weak attempt to bring the facts of this case closer to Flatley v. Mauro, 39

25  Cal. 4th 299 (2006), and the other cases cited by Defendants, where counsel's

26  accusations were unrelated to anything in the lawsuit and involved a threat to accuse

27  a party of committing a crime.

28

1    Renaissance's counsel has received numerous phone calls from members of
2    the press asking him to comment on this litigation.  Doroshow Decl., ¶6.  One
3    reason for this is that Chris and Pax Prentiss hold themselves out to be public
4    figures, and appear frequently on television and in other media claiming that they
5    can cure alcoholism and drug addiction, and that they have an 84% success rate in
6    doing so.  Doroshow Decl., ¶6.  Despite these inquiries, Renaissance and its counsel
7    have <u>never</u> made any comment in the media about this case, as in Mr. Doroshow's
8    opinion (and as he told Mr. Harder), trying the case in the press would make
9    settlement much more difficult, as Counterdefendants might decide they have no
10   choice but to litigate the matter to try to vindicate themselves.  Doroshow Decl., ¶7.
11   Renaissance's counsel has consistently told Counterdefendants and their counsel
12   that he would refrain from speaking to the press for so long as settlement
13   discussions were proceeding in good faith.  <u>Id.</u>

14          While they have known of Mr. Doroshow's position for weeks (if not
15   months), Counterdefendants and Mr. Harder were not sufficiently concerned to raise
16   these issues to anyone in any form until two and a half hours before filing their <u>ex</u>
17   <u>parte</u> Application.  If Grasshopper genuinely believed there was misconduct of an
18   ethical or criminal nature, it surely would and could have immediately gone to Mr.
19   Doroshow to discuss it, upon receiving the email early February about which it now
20   expresses concern.   In fact, the real purpose of the Application is to divert the focus
21   of the Court away from Counterdefendants' motion to disqualify Grasshopper's
22   counsel, and the serious ethical violations described in it.  If Grasshopper truly
23   believes there is any merit to its Application, it should file a regularly noticed
24   motion to be heard at the same time as Renaissance's disqualification motion on
25   April 4, 2011.

26

27

28

OPPOSITION TO EX PARTE APPLICATION; DECLARATION OF JAMES E. DOROSHOW

1

**III.    Conclusion**

2       For the foregoing reasons, Defendants ask the Court to deny Defendants' <u>ex</u>

3   <u>parte</u> Application in its entirety.

4

5   DATED:       March 1, 2011              FOX ROTHSCHILD, LLP

6

7                                          By_/s/ James E. Doroshow_____

8                                          James E. Doroshow
                                           Aaron Craig

9
                                           Attorneys For Defendants/Counterclaimants
10                                         Renaissance Recovery Services, LLC, NNB
                                           Recovery Services and Salvatore Petrucci

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

## DECLARATION OF JAMES E. DOROSHOW

I, James E. Doroshow, declare as follows:

1.    I am a partner with the law firm of Fox Rothschild, LLP, counsel of record herein for Defendants and Counterdefendants Renaissance Recovery Centers, NNB Recovery Centers and Salavtore Petrucci (collectively, "Renaissance"). I know the following facts based upon personal knowledge and if called to testify as a witness, I could and would testify competently thereto.

2.    I have reviewed the ex parte Application filed by Plaintiff and Counterdefendant Grasshopper House, and its counsel, Charles J. Harder of the law firm of Wolf Rifkin et al.  As Grasshopper and its counsel are well aware, the Application is devoid of merit and has been filed purely as an effort to obtain some form of tactical advantage in this litigation.

3.    On March 1, 2011, my office and my clients will be filing a Motion to Disqualify Mr. Harder and his firm from further representing his clients in this action. Mr. Harder has known of our intention to file this Motion for weeks. Although I sent him a letter on February 16, 2011 apprising him of our intention to file our Motion to Disqualify and clearly explained the grounds for the Motion, Mr. Harder never responded and failed to meet with me in clear violation of this Court's Local Rule 7-3. Accordingly, we will be filing the Motion to Disqualify without the ability to speak to Mr. Harder before filing it. The Motion will be scheduled to be heard by this Court on April 4, 2011.

4.    Knowing full well that his office has engaged in at least two serious ethical violations (including enlisting the assistance of a former Renaissance employee who hired me to defend Renaissance in this litigation, and who clearly has confidential attorney-client information materially related to this litigation; and by engaging in unsolicited, improper ex parte communications with Renaissance's Insurer in a clear attempt to convince the Insurer to stop funding this

1   litigation),  Grasshopper and Mr. Harder have now tried to trump Renaissance's

2   Motion by going on the offensive. Following the axiom that "the best defense is a

3   good offense," and in a transparent attempt to divert this Court's attention from his

4   own ethical violations, Mr. Harder informed me for the first time at approximately

5   10:15 am on Monday, February 28, 2011 that his office intended to seek to have me

6   and my firm disqualified; to have me disbarred; and to have me reported to the

7   United States Attorney's Office for criminal investigation, albeit on an <u>ex parte</u>

8   basis!  Knowing full well that there are no grounds for <u>ex parte</u> relief, Mr. Harder

9   nevertheless wanted to have his Application filed at the earliest possible opportunity

10  to create a smokescreen to try to distract this Court from the Motion my firm intends

11  to file later today. Accordingly, without ever conferring with me or anyone else at

12  my office, Mr. Harder first notified us of his <u>ex parte</u> Application at 10:15 am, and

13  then proceeded to file it with the Court less than three hours later that same day at

14  approximately 12:45 p.m.  A true and correct copy of an email I received from Mr.

15  Harder's paralegal (Raquel Rubio) attaching a copy of a letter from Mr. Harder

16  announcing his intention to file his <u>ex parte</u> Application  for the first time is attached

17  hereto as Exhibit 1.

18          5.    Immediately after receiving Mr. Harder's letter apprising my office of the

19  <u>ex parte</u> Application, at approximately 10:16 am on Monday, February 28, 2011, I

20  tried to reach Mr. Harder by telephone. However, when I called his office, I was told

21  that neither he nor his assistant were available to take my call.  I left a message for

22  Mr. Harder to return my call.  At the same time, at 10:16 a.m., I sent Mr. Harder and

23  his paralegal an email asking Mr. Harder to call me to discuss his letter, a true and

24  correct copy of which is attached as Exhibit 2 hereto.  My partner Aaron Craig

25  began drafting a letter in response, and also left a message for Mr. Harder at

26  approximately 11:00 a.m.  Mr. Harder, however, never returned any of these calls or

27  emails.  Instead, he filed his <u>ex parte</u> Application less than three hours later without

28  ever returning my call or speaking to me as I had requested.  Attached hereto as

2

1   Exhibit 3 is a true and correct copy of the Notice of Electronic Filing of

2   Grasshopper's ex parte Application that I received at 12:47 p.m.

3          6.   While my clients and my office cannot of course present a complete

4   opposition to the 27-page ex parte Application within one day, the Motion that has

5   been filed by Mr. Harder and Renaissance is clearly without merit. As Mr. Harder is

6   well aware, this litigation (as well as the Accelerated litigation that preceded it) has

7   been the subject of interest to the public, including members of the press. Over the

8   past two years in representing Accelerated and now Renaissance, I have received

9   numerous phone calls from members of the press and others who have asked me to

10  comment on this litigation. One of the reasons why there is so much interest in this

11  litigation is because Mr. Harder's clients (Chris and Pax Prentiss) have made a name

12  for themselves in the media (including on television, print media, and on the

13  internet) claiming that they can "cure' alcoholism, and have had an 84% success rate

14  in doing so. I have now uncovered evidence  (including by discovery in this action

15  and in the Accelerated action) to show these claims are false and misleading, and

16  that Grasshopper and Prentiss know this to be the case.

17         7.   When I have been contacted by members of the press and others who

18  have been interested in this action and the Accelerated action, I have told them I

19  would not comment. My reasons for doing so were twofold. One, I did not want to

20  pre-try this case in the press. Second, I did not want to make it impossible to settle

21  this litigation by boxing Grasshopper and Prentiss into a corner. I realized that if I

22  did speak to the press or others Grasshopper and Prentiss might have no choice other

23  than to continue to litigate this matter to try to vindicate themselves. Thus, contrary

24  to what Mr. Harder and his client represent to the Court in their ex parte

25  Application, I in fact repeatedly told Mr. Harder that I was not going to speak to the

26  press provided we could reach a fair settlement of this matter. These discussions all

27  occurred in the course of settlement discussions and were therefore designed to try

28  to resolve this litigation; not to "extort" money, which is of course pure fiction.

8.    Shortly before the parties were scheduled to meet with the mediator to try to settle this matter in early February 2011, I wrote Mr. Harder an email dated February 10, 2011, which he refers to in the first page of his client's Application, telling him that I could no longer continue to avoid speaking to the press and others if this case did not settle when we conducted our mediation. This was simply done to update Mr. Harder on the fact that my clients and I wanted to settle the litigation, and would continue to refrain from speaking to the press and others as long as a good faith effort was being made to settle the litigation; not to "extort" settlement. In fact, as is evident from his own Application, Mr. Harder and I had discussed the press' interest in this litigation for months before the scheduled mediation.

9.    At the February 2011 mediation, Mr. Harder and his clients made a nominal settlement offer. <u>My clients however never communicated any dollar demand given how low Mr. Harder's offer was</u>. Accordingly, the parties were unable to settle this matter at the February 2011 mediation. After the mediation, I informed Mr. Harder that I was now going to have to file a Motion to Disqualify him and his firm, and asked him to meet and confer with me before filing it. He has refused to do so.

10.    Last Friday, February 25, 2011, I received a letter from Mr. Harder asking me to confer with him ostensibly to discuss his office's intention to file a Motion to Compel my clients to appear for their depositions before the Court had ruled on Renaissance's Motion to Disqualify Mr. Harder and his firm. Unlike Mr. Harder (who has steadfastly refused to speak to me about our Motion to Disqualify his firm), I immediately called Mr. Harder after receiving his letter on February 25, 2011 to discuss it with him. Once again, as I had done in my correspondence before it, I explained to Mr. Harder that until the Court ruled on my client's Motion to Disqualify him and his firm, we thought further discovery by his office (including depositions of my clients) should be stayed. That is part of the relief Renaissance is now in fact seeking in its Motion to Disqualify.

11.     During our February 25, 2011 telephone conference, Mr. Harder then tried to play a trick on me. On his own, he brought up the failed settlement discussions at the mediation, and asked whether my client had a settlement demand. In response, I told him our initial settlement demand was going to be $250,000 at the mediation. He in turn then asked me if I had gone to either the press or Federal Trade Commission about this matter. As before, I told him I had not and was still hopeful that a settlement could be reached. At the same time, I told him that I recognized that if I did go to the press or the FTC, it might make it difficult if not impossible for his clients and mine to settle this litigation. He seemed to agree, and said he would get back to me. He never mentioned anything relating to his intention to seek to disqualify me during this telephone call or at any other time until raising the issue for the first time the next business day in his February 28, 2011 letter. (Exhibit 1 hereto). It is now clear that Mr. Harder was trying to trick me into making a specific settlement demand so that he could falsely argue to this Court I was threatening to go to the press or the FTC in order to supposedly "extort" this amount of money. As Mr. Harder is well aware, nothing could be further from the truth.

12.     Instead of following up on our settlement discussions as he implied he would, Mr. Harder sent me a letter for the first time yesterday notifying me that he and his client were intending to file an ex parte Application to have me and my firm disqualified, and for other relief since I was supposedly making a "six figure settlement demand" by threatening to go to the press and the FTC. In fact, as he himself acknowledges in his Declaration supporting his client's Application, I told him exactly the opposite.

13.     As appears of record from my clients' counterclaims in this action, the FTC has previously investigated and charged one of the counterdefendants in this action with engaging in false advertising in connection with another regulatory matter. Thus, the fact that the FTC has an interest in the parties to this action is well

1   known to Mr. Harder and his clients. This matter has been the subject of this

2   litigation long before the parties ever met to discuss settlement in February 2011.

3   Again, I have no interest in going to the FTC with anything related to this litigation,

4   since by doing so it would make this case extremely hard to settle. Thus, all that I

5   ever communicated to Mr. Harder in the email I sent him was that I was hopeful that

6   we could settle the litigation as part of our mediation, and if we could not, I could

7   not ensure him that we could continue to withhold information about his clients'

8   misconduct from the press or other interested parties. To call this "extortion" is of

9   course totally baseless and absurd.

10       14.   I will not currently dignify the remaining statements in Mr. Harder's

11   Application with a response at this point (although I would invite the Court to

12   review the Motion to Disqualify Mr. Harder and his firm that my office will be

13   filing later today to obtain a proper understanding of why Mr. Harder and his clients

14   are striking out at me at this point in time). One thing I must note, however, is that

15   the comment that Mr. Harder cites to the Court from Magistrate Abrams' October 6,

16   2010 Order in the Accelerated Action in fact refers to both me and Mr. Harder,

17   notwithstanding his efforts to try to convince the Court it is directed at me alone.

18   This is clear from a plain reading of the Order, including the Magistrate's use of the

19   plural when referring to counsel and their clients.  The plain fact is that both this

20   litigation and the Accelerated litigation that preceded it have been hotly contested,

21   and counsel have both said things in the course of these actions that they probably

22   now regret.  This however does not amount to unethical or criminal behavior that

23   would support the drastic relief Mr. Harder and his client's request (on an ex parte

24   basis).  By contrast, the repeated ethical violations by Mr. Harder and his clients in

25   both this action and in the prior Accelerated Action are clear violations of the

26   California Rules of Professional Conduct.  As hard as they may try to create a

27   smokescreen designed to divert this Court's attention from the merits of

28   Renaissance's Motion to Disqualify, there is no support for Mr. Harder's and his

6

1  client's counterattack, whether filed by regularly noticed Motion (as it should have
2  been) or otherwise.

3       I declare under penalty of perjury under the laws of the United States of
4  America that foregoing is true and correct.

5       Executed in Los Angeles, California this 1st day of March, 2011.

6

7

8                              James E. Doroshow
                               James E. Doroshow

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1800 Century Park East, Suite 300, Los Angeles, CA 90067-1506.

On March 1, 2011, I served the following document(s) described as

**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION TO DISQUAILFY OPPOSING COUNSEL AND FOR OTHER RELIEF; DECLARATION OF JAMES E. DOROSHOW**

on the interested parties in this action as follows:

Charles J. Harder, Esq.
Nicholas A. Merkin, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd., 9th Floor
Los Angeles, CA 90064-1582
charder@wrslawyers.com
nmerkin@wrslawyers.com

☑ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Fox Rothschild LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☑ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address jdoroshow@foxrothschild.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

OPPOSITION TO EX PARTE APPLICATION; DECLARATION OF JAMES E. DOROSHOW
LA1 74734v2 03/01/11

1      Executed this 1st day of March 2011, at Los Angeles, California.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO EX PARTE APPLICATION; DECLARATION OF JAMES E. DOROSHOW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO EX PARTE APPLICATION; DECLARATION OF JAMES E. DOROSHOW

# EXHIBIT 1

**Doroshow, James E.**

| | |
|---|---|
| **From:** | Raquel Rubio [RRubio@wrslawyers.com] |
| **Sent:** | Monday, February 28, 2011 10:15 AM |
| **To:** | Doroshow, James E.; Craig, Aaron |
| **Cc:** | Charles Harder |
| **Subject:** | Grasshopper/Passages v. Renaissance Recovery et al. ~ USDC Case #CV10-3198-DMG (JCx) |

**Attachments:** CH-Doroshow, Craig 022811.pdf

Please see the attached letter, which is being sent on behalf of Charles Harder.

Best regards,

Raquel Rubio
Paralegal and Assistant to Charles J. Harder, Esq. and Michelle E. Goodman, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd., 9th Floor
Los Angeles, California  90064
Tel: (310) 478-4100 x224 / Fax: (310) 479-1422
Email: rrubio@wrslawyers.com

This message contains information which may be confidential and privileged.  Unless you are the addressee (or authorized to receive e-mails for the addressee), you may not use, copy or disclose to anyone this message or any information contained in this message.  If you have received this message in error, please advise the sender by reply e-mail to rrubio@wrslawyers.com and delete the message.  Thank you.

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by U.S. Treasury Regulation Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for purposes of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

3/1/2011



LAW OFFICES

# WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

Charles J. Harder
charder@wrslawyers.com

File No.
17875-006

February 28, 2011

**VIA FACSIMILE** - (310) 556-9828
**EMAIL and U.S. MAIL**

James E. Doroshow, Esq.
Aaron Craig, Esq.
FOX ROTHSCHILD, LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067

Re:   *Grasshopper House, LLC v. Renaissance Recovery Services, LLC*
      USDC, CD Cal, Case No. CV 10-3198-DMG (JCx)

Dear Counsel:

Please take notice that Counter-Defendants Grasshopper House, LLC d/b/a
"Passages Malibu," Passages Silver Strand, LLC, Chris Prentiss and Pax Prentiss
(collectively, "Passages" or "Counter-Defendants") intend to seek relief on an *ex parte*
basis to address the recent and continuing acts of extortion by your office and/or your
clients, and all other unethical, unprofessional and unlawful acts by your office and/or
your client in this action and the recently dismissed Accelerated action (Case No. 09-
8128 DMG (PLAx)).

Any opposition to the *ex parte* application must be filed within 24 hours after the
filing of this application, pursuant to the Court's stated procedures.

Our application is necessary because your office, on behalf of your clients, are in
violation of (a) California Penal Code sections 518, 519 and 523, (b) California
Professional Rules of Conduct Rule 5-100, (c) California Business and Professions Code
section 6016, (d) the Federal Rules of Civil Procedure, (d) the Court's Local Civil Rules,
and (e) the Court's Civility and Professionalism Guidelines, among other laws and Court
rules.

James E. Doroshow, Esq.
Aaron Craig, Esq.
February 28, 2011
Page 2

Among other things, Mr. Doroshow (copying Mr. Craig) sent the following email to me on February 10, 2011:

> Mr harder,
>
> If our litigation is not settled next tuesday at the mediation, please advise your client that all bets are off. Among other activities, I am planning on going to both the press and federal trade commission with the information we have acquired in connection with our false advertising claims. My clients and I will no longer keep this shameful record of deceit under wraps.
>
> Jim doroshow

This communication is an act of criminal extortion and constitutes a violation of California Penal Code sections 518, 519 and 523. *Flately v. Mauro,* 39 Cal. 4th 299, 326 (2006); *Cohen v. Brown,* 173 Cal. App. 4th 302 (2009); *People v. Umana,* 138 Cal. App. 4th 625, 640 (2006). The communication also constitutes a violation of California Professional Rules of Conduct, Rule 5-100, as well as the other legal authorities and Court rules identified above. *See e.g. Crane v. State Bar,* 30 Cal. 3d 117 (1981); *In the Matter of Malek-Yonan,* 4 Cal. State Bar Ct. Rptr. 627 (Review Dept. 2003).

Following this February 10, 2011 email, Mr. Doroshow made a six-figure demand for money during a telephone call with me on February 25, 2011, and stated that he will refrain from going to the press or the Federal Trade Commission with information about Passages if that six-figure payment is made. This statement continues the acts of extortion by your office and your clients.

These are not the only statements that Mr. Doroshow has made regarding going to the press with information that he obtained about Passages in the litigation. In 2010, he made at least three other similar statements, two where he informed me that he intended to "ruin" or "destroy" Passages business by going to the press with information obtained in the Accelerated litigation. A third comment was made *on the record* during the Ayzeren deposition, where Mr. Doroshow stated that he would hold a press conference regarding allegations of attempted "rape" supposedly committed by Chris Prentiss.

James E. Doroshow, Esq.
Aaron Craig, Esq.
February 28, 2011
Page 3

Further, Mr. Doroshow has conducted himself with a total lack of professionalism and ethics throughout the Accelerated action, and the current action. His conduct identified in the Declarations of Chris Prentiss, Pax Prentiss, Thomas Nitti and Charles Harder, and exhibits thereto, in support of Chris Prentiss's the motion for protective order to terminate the Ayzeren deposition, illustrate his conduct of the past year. (Accelerated Dkt #87-1 through 87-6.) That motion was granted, the deposition was terminated, your client was sanctioned thousands of dollars, and the Magistrate Judge, referring to Mr. Doroshow's conduct, stated:

> The conduct of counsel as evidenced by the exhibits to this Motion [Accelerated Dkt #87-6, Exs. A-C] is an embarrassment to the profession, an insult to the Court, and a disservice to the clients in this action. The Court advises that if counsel are unable to control themselves when dealing with opposing counsel, they should have the good sense to remove themselves from this litigation.

Moreover, Mr. Doroshow's conduct at depositions and in person meetings can only be described as belligerent, abusive, obnoxious, and insulting to all individuals involved, including Passages' principals and employees, Passages' counsel, third party witnesses, court reporters and other observers.

The actions described above are merely a few examples of the unethical, unprofessional and unlawful conduct by your office, and by no means constitute a complete list. Further details will be provided in the *ex parte* application.

Your office did not heed the warnings of Magistrate Judge Abrams, to control yourselves when dealing with opposing counsel and "have the good sense to remove [yourselves] from the litigation" if you cannot. Rather, your unethical and unprofessional conduct only intensified since then, to the point of violating the California Penal Code and Rules of Professional Conduct, among other laws and Court rules. Because you obviously cannot control yourselves when dealing with opposing counsel, nor do you have the "good sense" to remove yourselves from the litigation, we will be asking the Court to remove your firm from the case, among other remedies that we will be seeking.

In the midst of your wrongful conduct, some of which is summarized above, Passages is trying to conduct discovery regarding Renaissance's pending Counterclaims,

James E. Doroshow, Esq.
Aaron Craig, Esq.
February 28, 2011
Page 4

including obtaining Renaissance's responsive documents and deposing its witnesses. However, your office and your clients are stonewalling Passages as to all such discovery. You and your clients have not produced any of your clients' documents, and refuse to produce them notwithstanding your obligations under FRCP Rules 26(a) and 34 to do so. Likewise, your office and your clients refuse to produce any of your witnesses for deposition. These acts of stonewalling have forced Passages to prepare *two* motions to compel, scheduled for hearing before Magistrate Judge Jacqueline Choolijian on March 15 and 29, 2011, respectively. Your acts of stonewalling in discovery are clearly calculated to severely prejudice Passages' ability to defend against Renaissance's pending Counterclaims, and violate the Federal Rules and Court's Local Rules.

For the reasons summarized above, and as will be set forth in greater detail in the ex parte application, Passages will be seeking the following remedies against your office and your clients, among other possible remedies:

1. An Order enjoining Renaissance and its counsel from any further conduct that violates the California Rules of Professional Conduct, the California Penal Code, the Court's Civility and Professionalism Guidelines, the Federal Rules of Civil Procedure, the Court's Local Rules, and any and all other applicable law and Court rules.

2. An Order of disbarment, suspension, public reproval, monetary penalties and/or other appropriate attorney discipline against Mr. Doroshow and all other attorneys at your firm so involved, and appropriate public reproval and/or monetary penalties against your law firm and/or other appropriate reprimand.

3. An Order reporting Mr. Doroshow and other attorneys at your firm so involved, to the Court's Standing Committee on Discipline, and the California State Bar, for their conduct.

4. An Order reporting Mr. Doroshow and other attorneys from your firm so involved, to the United States Attorneys' Office, for criminal investigation and/or prosecution for the acts of extortion described herein.

5. An Order compelling the production of all communications between your firm, on the one hand, and your clients, on the other hand, for *in camera* review by the Court to determine if your clients were aware of and/or involved in any of the conduct described herein.

James E. Doroshow, Esq.
Aaron Craig, Esq.
February 28, 2011
Page 5

6.      An Order imposing terminating sanctions against your clients as to their Counterclaims, or alternatively, warning your clients of the possibility of terminating sanctions if their actions, and that of their counsel, are not immediately and permanently corrected to comply with all applicable laws and Court rules.

7.      An Order awarding appropriate monetary sanctions against your firm, and your clients, (a) to compensate Passages for its legal fees and costs in connection with litigation concerning the improper conduct of your firm and/or your clients, and (b) to deter your office, and your clients, from engaging in like wrongful conduct in the future.

Please let me know if you and your clients will stipulate to the foregoing relief, or any of it, and otherwise if you or your clients will oppose the *ex parte* application and, if so, your grounds therefor.

This letter is not intended as a complete or exhaustive statement of the relevant facts or applicable law concerning these matters, and nothing contained herein is intended as a waiver or relinquishment of any rights and remedies that my clients might have in connection therewith, whether legal or equitable, all of which are hereby expressly reserved.

Very truly yours,

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN LLP

CHARLES J. HARDER

I:\17875\006\Letters\CH-Doroshow, Craig 022811.doc

# EXHIBIT 2

**Doroshow, James E.**

| | |
|---|---|
| **From:** | Doroshow, James E. |
| **Sent:** | Monday, February 28, 2011 10:16 AM |
| **To:** | 'Raquel Rubio'; Craig, Aaron |
| **Cc:** | Charles Harder |
| **Subject:** | RE: Grasshopper/Passages v. Renaissance Recovery et al. ~ USDC Case #CV10-3198-DMG(JCx) |

Please advise Mr. Harder I called him to discuss this matter after reviewing his letter this morning, and have left a message for him to return my call. Thank you, Jim Doroshow

---

**From:** Raquel Rubio [mailto:RRubio@wrslawyers.com]
**Sent:** Monday, February 28, 2011 10:15 AM
**To:** Doroshow, James E.; Craig, Aaron
**Cc:** Charles Harder
**Subject:** Grasshopper/Passages v. Renaissance Recovery et al. ~ USDC Case #CV10-3198-DMG(JCx)

Please see the attached letter, which is being sent on behalf of Charles Harder.

Best regards,

Raquel Rubio
Paralegal and Assistant to Charles J. Harder, Esq. and Michelle E. Goodman, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd., 9th Floor
Los Angeles, California 90064
Tel: (310) 478-4100 x224 / Fax: (310) 479-1422
Email: rrubio@wrslawyers.com

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive e-mails for the addressee), you may not use, copy or disclose to anyone this message or any information contained in this message. If you have received this message in error, please advise the sender by reply e-mail to rrubio@wrslawyers.com and delete the message. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by U.S. Treasury Regulation Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for purposes of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT 3

**Doroshow, James E.**

---

**From:** cacd_ecfmail@cacd.uscourts.gov
**Sent:** Monday, February 28, 2011 12:43 PM
**To:** ecfnef@cacd.uscourts.gov
**Subject:** Activity in Case 2:10-cv-03198-DMG-JC Grasshopper House, LLC et al v. Renaissance Recovery Services, LLC et al Ex Parte Application to Disqualify Counsel

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT RESPOND** to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Harder, Charles on 2/28/2011 at 12:43 PM PST and filed on 2/28/2011

**Case Name:**       Grasshopper House, LLC et al v. Renaissance Recovery Services, LLC et al
**Case Number:**   2:10-cv-03198-DMG-JC
**Filer:**                Grasshopper House, LLC
                          Passages Silver Strand, LLC
                          Chris Prentiss
                          Pax Prentiss
**Document Number:** 50

**Docket Text:**
**EX PARTE APPLICATION to Disqualify Counsel James E. Doroshow** *and his Firm* **filed by counter-defendants Grasshopper House, LLC, Passages Silver Strand, LLC, Chris Prentiss, Pax Prentiss. (Attachments: # (1) Declaration of Charles J. Harder, # (2) Exhibit A-H to Decl of Charles J. Harder, # (3) Exhibit I-K to Decl of Charles J. Harder, # (4) Exhibit L-O to Decl of Charles J. Harder, # (5) Proposed Order)(Harder, Charles)**

**2:10-cv-03198-DMG-JC Notice has been electronically mailed to:**

Aaron B Craig     acraig@foxrothschild.com

Alan C Chen     achen@foxrothschild.com, vsahagun@foxrothschild.com

Charles J Harder     charder@wrslawyers.com, rrubio@wrslawyers.com

James E Doroshow     jdoroshow@foxrothschild.com, acraig@foxrothschild.com,

3/1/2011

lwalters@foxrothschild.com

Jan Jensen   jjensen@wrslawyers.com, cteeter@wrslawyers.com

Michelle Elaine Goodman   mgoodman@wrslawyers.com

Nicholas A Merkin   nmerkin@frandzel.com, bwilson@frandzel.com, chassist@wrslawyers.com, efiling@frandzel.com

Phillip F Shinn   pshinn@foxrothschild.com, epaulsen@foxrothschild.com

**2:10-cv-03198-DMG-JC Notice has been delivered by First Class U. S. Mail or by fax to: :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Ex Parte to enjoin Renaiss and counsel, etc 022811 (FINAL).pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/28/2011] [FileNumber=11187687-0
] [61ff36df4e9c54be02211106e2078816e370345a13fe7b29e04cfde2a430e9c216e
4a50022e245a40dfa72261fa87d5d17471cee55e8f7199c86121d5752e10a]]
**Document description:**Declaration of Charles J. Harder
**Original filename:**C:\fakepath\Harder Decl re Ex Parte re Doroshow conduct (FINAL).pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/28/2011] [FileNumber=11187687-1
] [459cec68a445ff9bcf3df05547680a353e8ce1aa0947a184f4be2177739f31433d2
55918cbde75252bea3df9c350be8a19d6c5bafaa1d9336a9b444e797e717c]]
**Document description:**Exhibit A-H to Decl of Charles J. Harder
**Original filename:**C:\fakepath\Harder Exh A-H.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/28/2011] [FileNumber=11187687-2
] [1934dcb52579f3485e2aa83f076e7298537917517cd5e00722d131dbbdeef4713b3
843f06bcbfa6e14beb643aa20335531e129b03b3798a3000190fad9e31eb4]]
**Document description:**Exhibit I-K to Decl of Charles J. Harder
**Original filename:**C:\fakepath\Harder Exh I-K.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/28/2011] [FileNumber=11187687-3
] [7fa666a48f44aa578cfaf0d069cb985b2acee6f2cff67ab563deda750263908b795
8ebe0b7d38466424466f8e13ce1bc2ef4128e2d9c90be20ca6d18fedc6417]]
**Document description:**Exhibit L-O to Decl of Charles J. Harder
**Original filename:**C:\fakepath\Harder Exh L-O.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/28/2011] [FileNumber=11187687-4
] [9c91ce37142bb5c7eebc16b4649ad39e68a6a41f707e8f3b634efd4a7b991d4800d
bd27e648f7c400df8966322716d0fbb11fe18ce3ac70fbb8c6bbcc2dbeb16]]
**Document description:**Proposed Order
**Original filename:**C:\fakepath\[Proposed] Order re Ex Parte to disqual Doroshow, etc.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/28/2011] [FileNumber=11187687-5
] [3113f3a62754f5cccc6559a1cd57b71b8a9e8c3f3795d85ccc3e6c92146d17c8f50
74a0cdda8e2fa3946252f8baf9b8e3f6ae9dd360fff6f48d399b2c49dd33c]]